RUE LAW GROUP, LLC
5 Lake Drive, Woodland Lakes
Randolph, New Jersey 07869
(862) 283-3155
john@johnruelaw.com
John Rue, Esq. (ID #047032005)
Attorneys for Plaintiff J.W., on behalf of E.W.

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| J.W., on behalf of E.W.,<br>Plaintiff,<br>v.<br>LIVINGSTON BOARD OF EDUCATION,<br>Defendant. | Civil Action No. 2:26-cv-03678-KSH-AME<br>Motion Day: September 8, 2026 |

**PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT .......... 4
COUNTER-STATEMENT OF FACTS .......... 5
A. The examination and the first zero .......... 5
B. The two meetings and the second zero .......... 6
C. The consequences Defendant's own policies attach .......... 6
D. The representation that no appeal existed .......... 7
E. Heightened scrutiny, and withdrawal .......... 7
LEGAL ARGUMENT .......... 8
POINT I -- SUBJECT-MATTER JURISDICTION; NO EXHAUSTION REQUIREMENT .......... 8
A. *Patsy* forecloses the argument .......... 8
B. The Third Circuit and this Court have applied the rule here .......... 9
C. Exhaustion under § 1983 is not jurisdictional .......... 10
D. Primary jurisdiction fails on the four factors Defendant itself recites .......... 11
E. *Moyer*, Defendant's own authority, defeats the motion .......... 12
POINT II -- THE SCOPE OF THE MOTION RECORD .......... 12
A. Exhibits A and C through G are properly before the Court .......... 12

B. Exhibit B is not evidence of what happened at the January 28 meeting ...................... 13
POINT III -- PROCEDURAL DUE PROCESS CLAIM STATED ....................................... 14
A. Defendant's own policies establish that this was discipline ....................................... 14
B. E.W. was deprived of protected interests ..................................................................... 15
C. The process afforded was constitutionally inadequate ............................................... 18
D. Defendant's *de minimis* authorities do not reach this case ......................................... 18
POINT IV -- MUNICIPAL LIABILITY PLEADED ........................................................... 19
POINT V -- FIRST AMENDMENT RETALIATION PLEADED ....................................... 20
POINT VI -- COUNTS FOUR AND FIVE ........................................................................... 21
CONCLUSION ...................................................................................................................... 21

## TABLE OF AUTHORITIES

### Cases

*Ambrose v. Township of Robinson*, 303 F.3d 488 (3d Cir. 2002) .......... 20

*Bd. of Regents v. Roth*, 408 U.S. 564 (1972) .......... 17

*Cheyney State Coll. Faculty v. Hufstedler*, 703 F.2d 732 (3d Cir. 1983) .......... 9

*Fenton v. Stear*, 423 F. Supp. 767 (W.D. Pa. 1976) .......... 18, 19

*Goss v. Lopez*, 419 U.S. 565 (1975) .......... 17, 18

*Hassan v. Lubbock Indep. Sch. Dist.*, 55 F.3d 1075 (5th Cir. 1995) .......... 18

*Hill v. Borough of Kutztown*, 455 F.3d 225 (3d Cir. 2006) .......... 16

*Hochman v. Bd. of Educ. of the City of Newark*, 534 F.2d 1094 (3d Cir. 1976) .......... 5, 9, 10

*In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410 (3d Cir. 1997) .......... 12

*IPCO Safety Corp. v. WorldCom, Inc.*, 944 F. Supp. 352 (D.N.J. 1996) .......... 9

*J.G. o/b/o K.C. v. Hackettstown Pub. Sch. Dist.*, No. 3:18-cv-02365-PGS-DEA (D.N.J. Aug. 8, 2018) .......... 5, 10, 20

*Laney v. Farley*, 501 F.3d 577 (6th Cir. 2007) .......... 18

*McNeese v. Bd. of Educ. for Cmty. Unit Sch. Dist. 187*, 373 U.S. 668 (1963) .......... 9

*MCI Telecomms. Corp. v. Teleconcepts, Inc.*, 71 F.3d 1086 (3d Cir. 1995) .......... 9

*Moyer v. Showboat Casino Hotel*, 56 F. Supp. 2d 498 (D.N.J. 1999) .......... 9, 12

*Patsy v. Bd. of Regents of the State of Fla.*, 457 U.S. 496 (1982) .......... 4, 8, 9, 10

*Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192 (3d Cir. 1993) .......... 12

*Reiter v. Cooper*, 507 U.S. 258 (1993) .......... 9

*Robinson v. Dalton*, 107 F.3d 1018 (3d Cir. 1997) .......... 9

*Shepard v. Bd. of Educ.*, 207 F. Supp. 341 (D.N.J. 1962) .......... 9

*Wright v. New Jersey/Dep't of Educ.*, 115 F. Supp. 3d 490 (D.N.J. 2015) .......... 9

### Statutes and Rules

28 U.S.C. § 1331 .......... 10

42 U.S.C. § 1983 .......... passim

N.J.S.A. 18A:6-9 .......... 5, 10

N.J.S.A. 18A:38-1 .......... 17

N.J.A.C. 6A:16-7.2 through 7.4 .......... 4, 7, 14

Fed. R. Civ. P. 12(b)(1) .......... 10, 11

Fed. R. Civ. P. 12(b)(6) .......... 5, 10, 12, 13, 16

**PRELIMINARY STATEMENT**

Defendant found a high school student responsible for cheating, entered that finding in his permanent record, replaced his examination grade with a zero, and removed him from a mathematics honor society. It did so without written notice of the charge, without disclosing the evidence in advance, without written findings, and, on its own counsel's written account, without any appeal beyond the building principal. Defendant now asks this Court to hold that none of that mattered, because the student was never suspended.

That argument fails on Defendant's own documents. Defendant attached to its motion the Livingston High School Student Handbook, the Livingston Public Schools Code of Conduct, and Board Policy 5600. Those exhibits establish three things Defendant's brief does not acknowledge. First, an academic-integrity finding is not a social consequence: the Handbook enumerates its consequences, and they include documentation, a report to the assistant principal, no credit, a Saturday detention, an Unsatisfactory Citizenship marker, removal or suspension from academic honor societies, and retention of the record "for the duration of the student's career." Second, Policy 5600 commits Defendant, in terms, to provide any student to be disciplined with the due process procedures set forth in N.J.A.C. 6A:16-7.2 through 7.4 -- procedures Defendant's brief never mentions. Third, Policy 5600 provides that on transfer to another New Jersey public district, all information in a student's record relating to disciplinary action is disclosed to the receiving district.

Defendant's alternative request -- dismissal for failure to exhaust remedies before the Commissioner of Education -- is foreclosed by authority Defendant does not cite. Exhaustion of state administrative remedies is not a prerequisite to an action under 42 U.S.C. § 1983. *Patsy v. Board of Regents*, 457 U.S. 496 (1982). The Third Circuit has applied that rule to a New Jersey

school board defendant. *Hochman v. Board of Education of the City of Newark*, 534 F.2d 1094 (3d Cir. 1976). And this Court has rejected the identical N.J.S.A. 18A:6-9 argument, on a motion brought under the identical rule, in *J.G. o/b/o K.C. v. Hackettstown Public School District*, No. 3:18-cv-02365-PGS-DEA (D.N.J. Aug. 8, 2018).

The motion should be denied in its entirety.

## COUNTER-STATEMENT OF FACTS

On a Rule 12(b)(6) motion the allegations of the First Amended Complaint are taken as true and all inferences drawn in Plaintiff's favor. Plaintiff sets out below only what is necessary to frame the argument, with record citations to the Amended Complaint (ECF No. 5, filed as Defendant's Exhibit A at ECF No. 7-2) and to Defendant's own exhibits.

### A. The examination and the first zero.

E.W. took an AP Pre-Calculus Unit 4 examination on January 5, 2026. FAC ¶ 14. He corrected several multiple-choice answers during the testing period by crossing out his original selections and circling new ones, marking lightly because his mechanical pencil was nearly out of lead and his eraser was depleted. FAC ¶¶ 15-16. On January 20 he saw a posted score of 63; on January 21 he raised grading concerns with his teacher, Daniel Brill. FAC ¶¶ 17-18.

On January 22 E.W.'s parent emailed Mr. Brill. FAC ¶ 19. On January 23 Mr. Brill replied that the matter "appears to be a clear case of a breach of academic integrity" and that, "[a]s directed by Mrs. Battist-Rock" -- the assistant principal -- "a zero has been put in the gradebook for his Unit 4 Assessment." FAC ¶ 20. The grade was changed to zero on January 23, before any meeting with E.W. or his parents, before any disclosure of the evidence, and before any opportunity to be heard. FAC ¶ 21.

**B. The two meetings and the second zero.**

On January 28 the parents met informally with Assistant Principal Battist-Rock and Mr. Brill. The score was restored to 63 and the parents stated that they intended to appeal the academic-dishonesty finding. FAC ¶ 23. That afternoon the assistant principal wrote that "if you are looking to formally appeal, please reach out directly to our building principal, Mr. Mohammed." FAC ¶ 25.

On February 2 E.W. and his parents met with Principal Mohammed, Mr. Brill and a guidance counselor. School officials stated that they believed E.W. had cheated because they found it improbable that the teacher had made multiple grading errors, and Principal Mohammed said he had seen students do this "a lot." FAC ¶¶ 31-32. The requests for a retake, for interviews of classmates, and for forensic examination of the document were refused. FAC ¶¶ 33-34. Following the meeting, Principal Mohammed directed that the grade be reduced to zero a second time. FAC ¶ 35. No advance written notice of the charge, no advance disclosure of the evidence, no neutral fact-finder, no written findings, and no internal appeal were provided. FAC ¶ 36.

**C. The consequences Defendant's own policies attach.**

On or about February 6 -- four days after the meeting -- E.W. found that his Mu Alpha Theta membership no longer appeared in his Schoology portal, while the group remained active for other students. He received no notice or explanation. FAC ¶¶ 37-38.

Defendant's Exhibit F, the Livingston High School Student Handbook, provides that a violation of the Academic Integrity Code "will result in" documentation of the incident; a report to the parent; a report to the assistant principal; no credit for the assignment; "[o]ne day Saturday detention"; "[p]otential suspension or removal from athletic or extracurricular activities"; "[d]eferment/exclusion of application for, or removal/suspension from, academic honor

societies"; an Unsatisfactory Citizenship marker; and that "[t]his information is kept for the duration of the student's career." Ex. F at 32. The same exhibit provides that "[s]tudents who have a breach of academic integrity in a specific subject area are ineligible for that subject-specific honor society." Ex. F at 51.

Defendant's Exhibit E, Board Policy 5600, provides that "[a]ny student to be disciplined shall be provided the due process procedures for students and their families as set forth in N.J.A.C. 6A:16-7.2 through 7.4." Ex. E at 2.

**D. The representation that no appeal existed.**

In a March 2, 2026 email, District counsel stated that "the District does not offer appeals beyond the building level determinations for allegations of academic dishonesty" and that "[t]he determination of the Building Principal in this matter is final." FAC ¶ 44.

Defendant's Exhibit F says otherwise. Under the heading "Student Appeals Process," the Handbook directs a student or parent wishing to appeal a consequence to the teacher who assigned the penalty, the department supervisor if discipline is not involved, the student's assistant principal, and the principal; and provides that "for consequences of greater severity, the appeals process may continue, if necessary, as follows: 1. Principal 2. Assistant Superintendent 3. Superintendent." Ex. F at 82.

**E. Heightened scrutiny, and withdrawal.**

Hours after the January 28 meeting, Mr. Brill reported that E.W. had had his in-class assessment "in hand while talking with another student"; the other student, also holding an assessment, was not reported. FAC ¶ 27. On January 29 Mr. Brill directed E.W. to put his lunch box on the floor lest he "scratch his paper," though E.W. had placed it on his desk without objection before the dispute, and made remarks to the class referencing the specific

circumstances of E.W.'s dispute -- "run out of lead," "no eraser," "circle lightly," "five minutes after I gave it back," "you could have absolutely done something with it." FAC ¶¶ 28-29.

Plaintiff filed the original Complaint on April 7, 2026. FAC ¶ 49. On April 9 -- the first session of Mr. Brill's class after filing -- Mr. Brill called E.W. back after class, said he believed he had seen E.W. take something from his pocket to alter his folder, and asked whether E.W. had altered his test. E.W. showed the contents of his pocket, which held only a student identification card. FAC ¶ 50. E.W. ceased attending on or about April 10 and the family withdrew him. FAC ¶¶ 51-52. Because the school year was not completed, his Livingston transcript will not include credit for the incomplete courses, and he has lost the 2025-2026 academic year. FAC ¶¶ 53.

**LEGAL ARGUMENT**

**POINT I**

**THIS COURT HAS SUBJECT-MATTER JURISDICTION. EXHAUSTION OF STATE ADMINISTRATIVE REMEDIES IS NOT A PREREQUISITE TO AN ACTION UNDER 42 U.S.C. § 1983.**

Defendant's Point II asks the Court to dismiss the Amended Complaint under Rule 12(b)(1) because Plaintiff did not first petition the New Jersey Commissioner of Education. Def. Br. 12-15. The argument is foreclosed by Supreme Court authority Defendant does not cite, by Third Circuit authority Defendant does not cite, and by a decision of this Court rejecting the same argument under the same statute.

**A. *Patsy* forecloses the argument.**

In *Patsy v. Board of Regents of the State of Florida*, 457 U.S. 496 (1982), the district court dismissed a § 1983 action because the plaintiff had not exhausted available state administrative remedies. The Supreme Court reversed, holding: "Exhaustion of state administrative remedies is not a prerequisite to an action under § 1983." *Id.* at 500-16. The holding rests on congressional intent, and the Court declined to create a judicial exhaustion

requirement where Congress had legislated a narrow one for adult prisoners and no other. *Id.* at 502-12.

Defendant's brief contains no discussion of *Patsy*. Of the authorities collected in its Point II, all but one -- *Reiter*, *Cheyney State*, *MCI*, *IPCO*, *Robinson*, *Moyer*, and *Wright* -- arise outside § 1983 or address primary jurisdiction generally. None of them displaces *Patsy*.

The exception is *Shepard v. Board of Education of the City of Englewood*, 207 F. Supp. 341 (D.N.J. 1962), a § 1983 action against a New Jersey board of education dismissed for failure to exhaust before the Commissioner of Education under N.J.S.A. 18:3-14 and 15, the predecessor of the statute Defendant invokes. *Shepard* has not been good law for sixty years. It rested on *McNeese v. Board of Education*, 199 F. Supp. 403 (E.D. Ill. 1961), which it quoted at length, 207 F. Supp. at 346-47, and the Supreme Court reversed that decision eleven months later. *McNeese v. Board of Education for Community Unit School District 187*, 373 U.S. 668 (1963), held that students suing a board of education under § 1983 need not first pursue state administrative remedies, because "[w]e would defeat those purposes if we held that assertion of a federal claim in a federal court must await an attempt to vindicate the same claim in a state court," *id.* at 672, and because the federal right there was not "entangled in a skein of state law that must be untangled before the federal case can proceed," *id.* at 674. It was Justice Harlan, in dissent, who cited *Shepard* as an example of the approach the Court was rejecting. *Id.* at 676-77 (Harlan, J., dissenting). *Patsy* removed any residual doubt nineteen years later.

**B. The Third Circuit and this Court have applied the rule to New Jersey school boards.**

In *Hochman v. Board of Education of the City of Newark*, 534 F.2d 1094 (3d Cir. 1976), the district court dismissed a § 1983 action against a New Jersey board of education for failure to exhaust, where the plaintiff's appeal lay to the Commissioner of Education under N.J.S.A.

18A:6-9. The Third Circuit reversed, holding that "exhaustion of state remedies, whether judicial or administrative, is not required prior to the commencement of an action under 42 U.S.C. § 1983 in federal court," *id.* at 1097, and that "[w]hen appropriate federal jurisdiction is invoked alleging violation of First Amendment rights . . . we may not insist that he first seek his remedies elsewhere no matter how adequate those remedies may be," *id.* at 1098. Count Three of the Amended Complaint pleads First Amendment retaliation. *Hochman* is directly controlling as to that count and its reasoning -- resting on "the repeated and unqualified expressions of the Supreme Court" -- applies to the Amended Complaint as a whole.

This Court has already rejected the argument Defendant makes here. In *J.G. o/b/o K.C. v. Hackettstown Public School District*, No. 3:18-cv-02365-PGS-DEA (D.N.J. Aug. 8, 2018) (Sheridan, J.), a New Jersey school district moved under Rules 12(b)(1) and 12(b)(6) to dismiss a student's § 1983 and civil rights claims for failure to exhaust before the Commissioner under N.J.S.A. 18A:6-9. Judge Sheridan denied the motion, holding that "[t]here are no state exhaustion requirements for actions brought . . . under 42 U.S.C. § 1983 to enforce a federal constitutional claim" (citing *Hochman*), and that because the claims did not arise under the school laws, the Commissioner had no jurisdiction and "Defendants' exhaustion argument is without merit." Slip op. at 5-6. A copy is annexed.

**C. Exhaustion under § 1983 is not jurisdictional, Rule 12(b)(1) is the wrong vehicle.**

Defendant styles its exhaustion argument as an attack on subject-matter jurisdiction. Def. Br. 12-13. It is not. Jurisdiction over this action rests on 28 U.S.C. § 1331 because the Amended Complaint arises under the Constitution and 42 U.S.C. § 1983. FAC ¶ 10. *Patsy* resolved the exhaustion question as one of statutory interpretation, not of Article III or federal-question jurisdiction, and a federal court's jurisdiction over a § 1983 claim does not evaporate because a

state agency might also have entertained a related dispute. Defendant identifies no jurisdictional defect, and its motion under Rule 12(b)(1) should be denied on that ground alone.

**D. Primary jurisdiction fails on the four factors Defendant itself recites.**

Defendant quotes a four-factor test for primary jurisdiction and then never applies it. Def. Br. 13. Applied, it defeats the motion.

The first factor asks whether the question is within the conventional experience of judges or instead involves technical or policy considerations within the agency's expertise. The questions presented are whether a student received notice of the charge against him, advance disclosure of the evidence, a neutral decision-maker, written findings, and an avenue of review. Those are the paradigm questions of procedural due process. They require no educational expertise. Nothing in Defendant's brief suggests otherwise.

The second factor asks whether the question is particularly within the agency's discretion. The Commissioner has no discretion to decide whether the Fourteenth Amendment was satisfied.

The third factor asks whether there is a substantial danger of inconsistent rulings. There is no parallel proceeding. Defendant identifies none.

The fourth factor asks whether a prior application to the agency has been made. It has not -- and the reason appears in the Amended Complaint. Defendant's counsel told Plaintiff in writing that the District "does not offer appeals beyond the building level determinations for allegations of academic dishonesty" and that the Building Principal's determination "is final." FAC ¶ 44. Defendant's own Exhibit F provides an appeal ladder running past the principal to the Assistant Superintendent and the Superintendent. Ex. F at 82. A defendant that tells a family there is nowhere further to go cannot move to dismiss because the family did not go there.

**E. *Moyer*, Defendant's own authority, defeats the motion.**

Defendant quotes *Moyer v. Showboat Casino Hotel* for the proposition that a district court "may grant a motion to dismiss for lack of subject[-]matter jurisdiction based on the plaintiff's failure to exhaust a required administrative remedy *only if it is undisputed* that there has been no attempt to exhaust the administrative remedy." Def. Br. 14 (emphasis added). Nothing here is undisputed. The Amended Complaint pleads that the parents told school officials they intended to appeal, FAC ¶ 23; that the assistant principal directed them to the principal for a formal appeal, FAC ¶ 25; that they appealed to the principal, FAC ¶¶ 30-34; and that they were then told no further appeal existed, FAC ¶ 44. On Defendant's own authority, that forecloses dismissal.

## POINT II

## THE COURT MAY CONSIDER DEFENDANT'S EXHIBITS, BUT NOT EXHIBIT B FOR THE TRUTH OF COUNSEL'S ACCOUNT OF A MEETING SHE DID NOT ATTEND.

Plaintiff does not ask the Court to disregard Defendant's exhibits. To the contrary, the Handbook, the Code of Conduct and Policy 5600 are integral to the Amended Complaint, which quotes and relies on them, and they are the strongest evidence in this record that Defendant treated this matter as discipline and then withheld the process discipline requires. Plaintiff asks only that one document be given its proper evidentiary weight, which is none.

**A. Exhibits A and C through G are properly before the Court.**

On a Rule 12(b)(6) motion the Court may consider the complaint, exhibits attached to it, and undisputedly authentic documents on which the plaintiff's claims are based. *In re Burlington Coat Factory Securities Litigation*, 114 F.3d 1410, 1426 (3d Cir. 1997). It may also consider matters of public record. *Pension Benefit Guaranty Corp. v. White Consolidated Industries, Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993). Exhibit A is the Amended Complaint. Exhibits D, E and F

are the District's published Code of Conduct, Board policy and student handbook, each a public document and each relied upon in the Amended Complaint. FAC ¶¶ 39-41, 46. Exhibit G is Plaintiff's counsel's own April 13, 2026 letter, referenced at FAC ¶ 52. Exhibit C is the examination. Plaintiff does not dispute that the Court may look at these documents.

**B. Exhibit B is not evidence of what happened at the January 28 meeting.**

Exhibit B is a February 25, 2026 letter from Defendant's counsel to Plaintiff's counsel. Defendant uses it for a specific factual proposition: that when the parents met with Assistant Principal Battist-Rock, "they concurred with Mr. Brill's assessment that the modifications of the exam constituted academic dishonesty." Ex. B at 2. Counsel was not present at that meeting. The letter is her secondhand account of it, written a month later and in anticipation of litigation.

The Amended Complaint squarely disputes that account. FAC ¶ 43 ("Plaintiff disputes any characterization, including in counsel's February 25, 2026 correspondence, suggesting that E.W.'s parents concurred in a determination of academic dishonesty."). The letter also conflicts with the Amended Complaint on the chronology: it states that the assistant principal recommended a zero but deferred to Mr. Brill, so that "the grade remained at a 63," Ex. B at 2, while the Amended Complaint pleads Mr. Brill's January 23 email stating that "[a]s directed by Mrs. Battist-Rock . . . a zero has been put in the gradebook." FAC ¶ 20.

A document may be considered on a Rule 12(b)(6) motion because it is authentic and integral to the claims. It does not follow that its contents are established as true. Defendant may not use its lawyer's letter to contradict the pleading and then insist the pleading yield. The Court should consider Exhibit B for the fact that it was sent and for Defendant's litigation position -- including its statement that E.W.'s grade "will remain at a '0' as a result of the determination of

academic dishonesty" -- and not for the truth of counsel's narrative of a meeting she did not attend.

**POINT III**

**THE AMENDED COMPLAINT STATES A CLAIM FOR DENIAL OF PROCEDURAL DUE PROCESS.**

**A. Defendant's own policies establish that this was discipline.**

Defendant's brief describes the honor society removal, the heightened scrutiny and the record entry as "natural, typical and expected social consequences for a student with a finding of academic dishonesty against him." Def. Br. 8. Defendant's Exhibit F says the opposite. The Handbook does not describe what may socially befall a student found responsible for an academic-integrity violation; it enumerates what the school *will* do to him. Ex. F at 32. Removal or suspension from academic honor societies appears on that list, between the Saturday detention and the Unsatisfactory Citizenship marker. *Id.* And the Handbook elsewhere makes the link mandatory: "[s]tudents who have a breach of academic integrity in a specific subject area are ineligible for that subject-specific honor society." Ex. F at 51. E.W.'s removal from Mu Alpha Theta four days after the finding was not a social consequence. It was the policy operating.

Defendant does not actually dispute the characterization when it matters. Its brief states that Principal Mohammed "concurred with the determination that the incident constituted academic dishonesty, applying a disciplinary response and grading the exam as a 0%." Def. Br. 3 (emphasis added). It states that "[t]he only discipline applied was an alteration of the test grade." Def. Br. 7. Having called it discipline, Defendant is bound by what its own Policy 5600 promises to any student who is disciplined: "[a]ny student to be disciplined shall be provided the due process procedures for students and their families as set forth in N.J.A.C. 6A:16-7.2 through 7.4." Ex. E at 2. Defendant's brief cites N.J.A.C. 6A:16-7.2(a)(4) alone, for short-term

suspensions, Def. Br. 7, and says nothing about 7.3 or 7.4. Nor is the promise narrowed by the fact that 7.2 through 7.4 address suspension and expulsion. Policy 5600 conditions the commitment on a student's being disciplined, not on the form the discipline takes; the regulations supply the content of the process the Board undertook to provide, not the trigger for it. Having called its own action a disciplinary response, Defendant cannot read its policy to reach only the penalties it declined to impose.

The zero itself confirms the characterization. E.W. sat the examination on January 5 and a score of 63 was posted on January 20 -- before anyone accused him of anything. FAC ¶¶ 14, 17. The accusation, when it came, was that he altered answers after the examination had been graded and returned. Whatever the merits of that charge, it has nothing to do with the 63 points E.W. earned on the questions he answered correctly, and Defendant has never contended otherwise. Reducing the grade to zero did not evaluate E.W.'s performance. It withdrew credit he had already earned, as a penalty for alleged misconduct unrelated to those points. That is why Defendant's own Handbook places the loss of credit among the consequences a student suffers for an academic-integrity violation rather than among its grading standards. Ex. F at 32-34. And the sequence removes any doubt: the grade was reduced to zero on January 23, restored to 63 on January 28 when the parents objected, and reduced to zero a second time after the February 2 meeting. FAC ¶¶ 20-21, 23, 35. An academic judgment does not move with the progress of an appeal. A sanction does.

**B. E.W. was deprived of protected interests.**

Defendant's argument reduces to the proposition that because E.W. was never removed from the classroom, no protected interest was touched. That misreads the injury. The deprivation pleaded is a stigmatizing finding of dishonesty, imposed by a state actor, coupled with tangible

consequences: a zero, removal from an honor society, and a record retained "for the duration of the student's career." Ex. F at 32; FAC ¶¶ 5, 40, 54, 58.

Defendant argues that the finding cannot injure reputation because it is confidential. Def. Br. 8. The Amended Complaint pleads otherwise, and pleads dissemination that has already occurred rather than dissemination that may. On January 29, the day after the meeting at which E.W.'s parents contested the finding, Mr. Brill directed E.W. to place his lunch box on the floor lest he "scratch his paper," and made remarks to the assembled class rehearsing the specific circumstances of E.W.'s examination dispute -- "run out of lead," "no eraser," "circle lightly," "five minutes after I gave it back," "you could have absolutely done something with it." FAC ¶¶ 28-29. Those statements were made by a teacher, in a classroom, to the same students who had watched that examination be returned and collected days earlier.

That Mr. Brill did not use E.W.'s name, FAC ¶ 29, does not answer the allegation. He had singled E.W. out in that same classroom that same day. FAC ¶ 28. And the remarks he made track, item for item, E.W.'s own account of what happened to the examination: that he marked lightly because his mechanical pencil was nearly out of lead and his eraser was depleted. FAC ¶¶ 15-16. A teacher who repeats a student's explanation back to that student's classmates has identified him as surely as if he had used the name. Whether the students who heard the remarks understood them to refer to E.W. is a question of fact, and on a Rule 12(b)(6) motion it is resolved in Plaintiff's favor.

That is what the stigma element requires. To plead a stigma-plus claim a plaintiff must allege that the stigmatizing statements were made publicly and were false, and that the stigma was accompanied by the alteration or extinguishment of a right or status previously recognized by state law. *Hill v. Borough of Kutztown*, 455 F.3d 225, 236 (3d Cir. 2006). Each element is

pleaded. The publicity is FAC ¶¶ 28-29. The falsity is FAC ¶¶ 15-16, which plead that the corrections were made during the testing period, and FAC ¶ 23, which pleads that the finding was contested as soon as it was made. The alteration of status is the zero, the removal from Mu Alpha Theta that Exhibit F makes automatic, and the record retained "for the duration of the student's career." Ex. F at 32, 51; FAC ¶¶ 5, 40, 54, 58. Defendant's brief does not address these allegations at all.

In the alternative, E.W. held a property interest in the credit he had already earned. Property interests are "created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law." *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972). New Jersey supplies that source: public schools "shall be free" to persons over five and under twenty years of age domiciled in the district. N.J.S.A. 18A:38-1. Having extended that right, a State "may not withdraw [it] on grounds of misconduct absent fundamentally fair procedures to determine whether the misconduct has occurred." *Goss*, 419 U.S. at 574. Defendant's own Handbook treats credit the same way, listing its withdrawal among the consequences imposed for an academic-integrity violation. Ex. F at 32-34. Defendant took E.W.'s earned credit without notice of the charge, without disclosure of the evidence, and without any opportunity to be heard. Plaintiff does not contend that a student has a protected interest in a grade he has not earned, or in the exercise of academic judgment. He contends that a school may not label a confiscation a grade and thereby escape the process its own policy promises.

**C. The process afforded was constitutionally inadequate.**

Defendant's position is that two meetings satisfied *Goss v. Lopez*, 419 U.S. 565 (1975), and that nothing more was owed. Def. Br. 9-10. Three features of the pleaded facts defeat that at this stage.

First, the sanction preceded the process. The zero was entered on January 23 at the direction of the assistant principal, before any meeting, before any disclosure of the evidence, and before E.W. was heard. FAC ¶¶ 20-21. *Goss* requires notice and an opportunity to respond *before* the sanction, not a meeting afterward to see whether the school will change its mind.

Second, the pleaded facts describe ratification rather than review. The Amended Complaint alleges that the decision-makers had already accepted the accusation, relied on generalized assumptions about what students do rather than on evidence about what E.W. did, and refused the specific evidentiary requests that could have tested the charge -- classmate accounts, a forensic look at the paper, a retake. FAC ¶¶ 32-34, 60. Whether that describes a fair process is not a question this Court can resolve against Plaintiff on the pleadings.

Third, Defendant told Plaintiff there was no appeal, and its own exhibit says there was. FAC ¶ 44; Ex. F at 82. Defendant cannot have it both ways. If the Building Principal's determination truly was final, then the process consisted of one administrator's judgment with no review -- and Monell liability follows, see Point IV. If it was not final, Defendant denied E.W. an appeal that its own published policy gave him.

**D. Defendant's de minimis authorities do not reach this case.**

Defendant relies on *Laney v. Farley*, *Hassan v. Lubbock Independent School District*, and *Fenton v. Stear* for the proposition that trivial deprivations do not implicate due process. Def. Br. 8. Each involved a discrete, self-limiting penalty imposed on undisputed facts: a one-day in-

school suspension served with credit for attendance; a brief custodial measure during a field trip; and, in *Fenton*, a three-day in-school suspension and an eleven-day in-school restriction imposed on a student who admitted the conduct charged, 423 F. Supp. at 771. None involved a finding of dishonesty entered on a student's record and retained for the balance of his school career, exclusion from an honor society, or a record that regulation requires be transmitted to the next district. The question is not the size of the grade penalty. It is the durability and portability of the finding.

## POINT IV

## THE AMENDED COMPLAINT STATES A CLAIM FOR MUNICIPAL LIABILITY.

Defendant's treatment of Count Two is a single sentence: because there is no constitutional violation, there is no municipal liability. Def. Br. 12. That is not an argument against the *Monell* count; it is a restatement of Point I. If Counts One or Three survive, Count Two survives with them.

Independently, the final-policymaker theory is pleaded on Defendant's own representation. Defendant's counsel wrote that the Building Principal's determination "is final" and that no appeal exists beyond the building level. FAC ¶ 44. A deprivation caused by an official with final policymaking authority over the subject matter is municipal action. FAC ¶¶ 45, 65. Defendant cannot represent that its principal is the last word and simultaneously contend that his decision is not the Board's.

The Amended Complaint also pleads policy and custom in the alternative: procedures that permit administrators to impose and maintain academic-integrity findings and their enumerated consequences without advance written notice, disclosure of the evidence, written

findings, or any meaningful appeal, as reflected in Policy 5600 and the Handbook and in the handling of this accusation. FAC ¶¶ 66-68.

**POINT V**

**THE AMENDED COMPLAINT STATES A CLAIM FOR FIRST AMENDMENT RETALIATION.**

Defendant does not dispute that challenging a disciplinary determination is protected activity. Its argument is causation: the zero was "the appropriate disciplinary response of the designated disciplinarian," and Mr. Brill's conduct "can more reasonably be associated with his instructional intuition, knowledge and experience." Def. Br. 11. Defendant offers no record support for either proposition, because there is none in the Amended Complaint.

That is dispositive at this stage. A defendant's alternative explanation for its conduct is a merits defense; it is not a basis to dismiss a pleading that alleges the opposite. In *J.G.*, the district advanced precisely this move -- arguing that the discipline was based on bullying complaints and concern about disruption -- and Judge Sheridan declined to credit it because "there is nothing alleged in the Complaint to support same." Slip op. at 9. The same answer applies to Defendant's *Ambrose* argument that it "would have taken the same action even in the absence of the protected conduct." Def. Br. 11. That is an affirmative defense on which Defendant bears the burden, and it cannot be established from a complaint that pleads the contrary.

The pleaded sequence supports the inference Defendant resists. The zero was re-imposed immediately after the February 2 challenge. FAC ¶ 35. The heightened scrutiny began hours after the January 28 meeting. FAC ¶¶ 26-27. The renewed accusation came on April 9, in the first class session after this action was filed on April 7. FAC ¶¶ 49-50, 71-72. Temporal proximity of that kind, pleaded alongside the specific conduct alleged, is enough at the pleading stage.

Defendant's suggestion that this is the isolated conduct of one teacher is answered by the Amended Complaint. The original zero was entered at the direction of the assistant principal; the principal re-imposed it and declared the determination final; Mr. Brill's reports were made to and acted on within the administration; and after counsel's April 13 letter placed Defendant on notice of the retaliation concern, Defendant took no step -- a schedule change, a different section -- that might have allowed E.W. to remain enrolled. FAC ¶ 73.

**POINT VI**

**COUNTS FOUR AND FIVE ARE NOT INDEPENDENTLY CHALLENGED.**

Defendant's only argument as to Counts Four and Five is that they depend on a valid constitutional claim. Def. Br. 12. They do, and there is one. Defendant advances no separate ground for dismissing the declaratory or injunctive counts, and none should be supplied for it.

**CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendant's motion to dismiss the First Amended Complaint in its entirety.

Respectfully submitted,

RUE LAW GROUP, LLC
Attorneys for Plaintiff

By: /s/ John Rue
John Rue, Esq. (ID #047032005)
5 Lake Drive, Woodland Lakes
Randolph, New Jersey 07869

Dated: August 24, 2026