**CLEARY GIACOBBE ALFIERI JACOBS LAGANA LLC**
169 Ramapo Valley Road
Upper Level 105
Oakland, New Jersey 07436
Tel: 973-845-6700
Fax: 201-644-7601
Jaclyn S. D'Arminio, Esq. (ID# 90252012)
jdarminio@cgajl.law
Attorneys for Defendant Livingston Board of Education

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| J.W. o/b/o E.W.<br><br>Plaintiff,<br><br>vs.<br><br>LIVINGSTON BOARD OF EDUCATION<br><br>Defendant. | CIVIL ACTION NO. 2:26-cv-03678<br>Civil Action<br><br>**BRIEF IN FURTHER SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT IN LIEU OF ANSWER** |

# Contents

**LEGAL ARGUMENT** .......... 3

**REPLY POINT 1 THE NEW JERSEY COMMISSIONER OF EDUCATION HAS PRIMARY JURISDICTION OVER THIS MATTER, AND AS SUCH, PLAINTIFFS SHOULD BE DIRECTED TO SEEK REDRESS IN THE APPROPRIATE FORUM.** ... 4

**REPLY POINT 2 PLAINTIFF HAS NO CLAIM TO A DEPRIVATION OF A REPUTATIONAL INTEREST BECAUSE PLAINTIFF'S CLAIMS ARE NOT SUPPORTED UNDER "STIGMA PLUS"** .......... 5

**REPLY POINT 3 HE PROCESS PROVIDED TO PLAINTIFF WAS ADEQUATE AND APPROPRIATE UNDER THE LAW.** .......... 7

**CONCLUSION** .......... 9

# Table of Authorities

**Cases**

Bethel Sch. Dist. No. 403 v. Fraser, 478 U.S. 675, 682 (1986)........ 8
Goss v. Lopez, 419 U.S. 565, 583 (1975)........ 8
Hill v. Borough of Kutztown, 455 F.3d 225 (3d Cir. 2006)........ 6
IPCO Safety Corp. v. WorldCom, Inc., 944 F. Supp. 352, 356 (D.N.J. 1996)........ 4
Lynch v. N.J. Educ. Ass'n, 161 N.J. 152, 164–65 (1999)........ 7
New Jersey v. T.L.O., 469 U.S. 325, 340 (1985)........ 9

**Other Authorities**

Fed. R. Civ. P. 12(b)(1)........ 10
Fed. R. Civ. P. 12(b)(6)........ 9

## LEGAL ARGUMENT

### REPLY POINT 1
### THE NEW JERSEY COMMISSIONER OF EDUCATION HAS PRIMARY JURISDICTION OVER THIS MATTER, AND AS SUCH, PLAINTIFFS SHOULD BE DIRECTED TO SEEK REDRESS IN THE APPROPRIATE FORUM.

Plaintiffs assert that the controversy in question fails the primary jurisdiction test. They argue that the question at the center of this matter is "whether a student received notice of the charge against him, advance disclosure of the evidence, a neutral decision maker, written findings and an avenue of review." Defendants assert that Plaintiffs have incorrectly identified the question central to this dispute. In fact, Defendants argue that the central issue is whether E.W. falsified his math exam, and whether the process afforded to Plaintiffs was sufficient to ensure that the disciplinary consequences suffered by E.W. were appropriately levied.

This question certainly survives the four-factor test for primary jurisdiction because the question at issue involves technical and policy considerations that fall within the agency's particular field of expertise and because the question at issue is directly within the agency's discretion. See IPCO Safety Corp. v. WorldCom, Inc., 944 F. Supp. 352, 356 (D.N.J. 1996). ("To determine whether the doctrine of primary jurisdiction is applicable, a court must consider: 1) whether the question at issue is within the conventional experience of judges or whether it involves technical or policy considerations within the agency's particular field of expertise; 2) whether the question at issue is particularly within the agency's discretion; 3)whether there exists a substantial danger of inconsistent rulings; and 4)whether a prior application to the agency has been made.")

When determining if the process was sufficient and the consequences fair, the adjudicator in this case must have an understanding of schoolhouse dynamics, the frequency of this kind of violation, the roles and powers of each member of the administration, the actual extended

consequences of a disciplinary finding, the legal obligations of the District to the student, parent and other interested parties, and the resources available to be devoted. This is precisely the type of technical and policy consideration that is outside of the scope of the conventional judiciary, and falls squarely within that of those who have expertise in administering schools, such as the offices of the New Jersey Commissioner of Education. As such, prong one of the four-factor test is certainly satisfied in placing primary jurisdiction with the same.

In addition to satisfying the first prong of the test, the second prong is also satisfied. Throughout their responsive brief, Plaintiffs indicate that they have been deprived of due process rights because the Building Principal's determination was labeled as "final," leaving no room for appeal. However, they have neither cited nor asserted any authority that mandates a specific internal appeal process. Further, they ignore the obvious. When a controversy arises under school law in the State of New Jersey, the State prescribes that these controversies may be resolved by appeal to the Commissioner of Education. "The Commissioner shall have jurisdiction to hear and determine…. All controversies and disputes arising under the school laws." N.J.A.C. 6A:3-1.1 et. seq. effectuates that allocation of jurisdiction by proscribing rules of procedure for the filing of petitions before the Commissioner for this purpose. The Commissioner of Education of the State of New Jersey has, and should be permitted to exercise their primary jurisdiction over this matter.

Based upon the foregoing, Plaintiffs' claim should be dismissed, and they should be directed to seek redress in the forum specifically designated and prepared to consider this claim.

## REPLY POINT 2
## PLAINTIFF HAS NO CLAIM TO A DEPRIVATION OF A REPUTATIONAL INTEREST BECAUSE PLAINTIFF'S CLAIMS ARE NOT SUPPORTED UNDER "STIGMA PLUS"

Despite Plaintiffs' efforts, there is no legal basis for their assertion that E.W. has established a "stigma plus" claim. It should be noted that Plaintiffs cannot produce any case law supporting that a "stigma plus" claim for due process violation is applicable to a school disciplinary action, and certainly not one where the student was not otherwise removed from the classroom. Regardless, the Plaintiffs set forth Hill v. Borough of Kutztown, 455 F.3d 225 (3d Cir. 2006) as the pinnacle case regarding stigma-plus being recognized per state law. Hill v. Kutztown involved the dismissal of a licensed professional engineer by the Kutztown Mayor and Council. Thereafter, the Kutztown Mayor and Council made public defamatory statements to the local newspaper, including allegations that Hill participated in irregular or illegal allocations of funds. Per the court in Hill, "to make out a due process claim for deprivation of a liberty interest in reputation, a plaintiff must show a stigma to his reputation plus deprivation of some additional right or interest. In the public employment context, the stigma plus test has been applied to mean that when an employer 'creates and disseminates a false and defamatory impression about the employee in connection with his termination,' it deprives the employee of a protected liberty interest. [...]. The creation and dissemination of a false and defamatory impression is the "stigma," and the termination is the "plus." […] To satisfy the "stigma" prong of the test, it must be alleged that the purportedly stigmatizing statement(s) were made publicly." Hill at 236 (internal citations omitted).

Plaintiffs cannot establish stigma-plus because the Defendant has made no public statements regarding E.W.'s discipline. None of the allegations in Plaintiffs' complaint make that assertion, and the Plaintiffs have raised no claim of any confidentiality obligation right being violated. Commentary by an instructor in the course of his duties regarding appropriate and expected behavior does not amount to a public declaration that E.W. is a cheater, like Hill demands.

Further, none of the District's actions or statements towards E.W. would be considered defamatory. "[A] statement is defamatory if it is false, communicated to a third person, and tends to lower the subject's reputation in the estimation of the community or to deter third persons from associating with him." Lynch v. N.J. Educ. Ass'n, 161 N.J. 152, 164–65 (1999) (citing Restatement (Second) of Torts §§ 558, 559 (4th ed. 1977)). The District's processes at three levels (instructor, vice principal, and principal) determined that E.W. was not innocent of the cheating allegation. In addition, as stated above and in the original brief, there has been no allegation levied that E.W.'s cheating, alleged or proven, has been disseminated to the general public in any manner.

Plaintiffs are attempting to make this argument only because they know that the discipline imposed on E.W. does not deprive him of any other constitutionally protected right. The assertion that students have a property right towards their numerical or letter grades, or placement in specific honor societies, is not one which is supported by any case law or statute. What E.W. does have a right to is a free public education, one of which he has not been deprived of in any way due to these allegations. As such, Plaintiffs' claims should be dismissed.

## REPLY POINT 3
## HE PROCESS PROVIDED TO PLAINTIFF WAS ADEQUATE AND APPROPRIATE UNDER THE LAW.

Plaintiffs' own complaint demonstrates that they were provided with adequate due process under the law. Plaintiffs admit that they were provided with two supervisory-level meetings on the matter. (First Amended Complaint(hereinafter "FAC") Paragraph 23 and Paragraph 31). Plaintiffs admit that at these meetings they were provided with an opportunity for E.W. to explain his side of the story, offer alternative explanations, and request possible avenues for alternative actions (FAC Paragraph 23 and 33). Plaintiffs even admit that they were fully aware of the accusations made against E.W. prior to the first of the two meetings (FAC Paragraphs 20 and 22).

Plaintiffs' argument asserts that this due process is inadequate. They would require that prior to the implementation of any disciplinary action, public school students are entitled to written notice and a full and impartial hearing to determine the "guilt" of the student, with witnesses and even forensic analysis, before any disciplinary consequences can be issued. Plaintiffs seek to hold our schools to the trial-like and procedural protections of the criminal courts when making determinations as to a cheating allegation. Plaintiffs' filing and briefing suggest that every incident of disciplinary concern in a school building must be subject to a highly specific and organized level of scrutiny and due process before any disciplinary response can be measured against a student. This conviction is completely unsupported under the law and devoid of the realities of the school building.

As identified in Defendant's original briefing, the Supreme Court has recognized that such a requirement for trial-like procedures and protections would handcuff the school's ability to maintain appropriate levels of authority and discipline. To impose in each such case even truncated trial-type procedures might well overwhelm administrative facilities in many places and, by diverting resources, cost more than it would save in educational effectiveness." Goss v. Lopez, 419 U.S. 565, 583 (1975). Even in cases like Goss where a student was suspended and actively prevented from engaging in the educational right afforded to them, such trial-like procedures are not expected.

The "special characteristics of the school environment" have long been recognized as grounds for the understanding that the constitutional rights of students in public schools "are not automatically co-extensive with the rights of adults in other settings." Bethel Sch. Dist. No. 403 v. Fraser, 478 U.S. 675, 682 (1986) (finding that a student could be disciplined for using vulgar innuendo during a speech made at a school assembly). "Maintaining security and order in the

schools requires a certain degree of flexibility in school disciplinary procedures, and we have respected the value of preserving the informality of the student-teacher relationship." New Jersey v. T.L.O., 469 U.S. 325, 340 (1985) (finding reasonable suspicion a justifiable standard for the search of a student's possessions by a school official). "The difficulty is that our schools are vast and complex. Some modicum of discipline and order is essential if the educational function is to be performed. Events calling for discipline are frequent occurrences and sometimes require immediate, effective action." Goss, at 580.

Here, this Court is reminded, as laid out more fully in Defendant's original briefing, that the Parents in this matter were provided with, not one, but two distinct meetings within two layers of administration above the original instructor, to present their son's position on the alleged "cheating" and be heard on the matter. There is no dispute that the Plaintiffs were unaware of the form and content of the allegations made against their son, nor were they prevented from reviewing the District's evidence. These due process protections would be constitutionally sufficient even where the deprivation of constitutional rights is more substantial, such as a suspension. That the educators to whom they spoke disagreed with the Plaintiffs ' preferred "facts" and placed more credibility in the instructor's statements in light of the evidence under review is not a failure of due process and rather, is an example of the system at work.

As such, the Plaintiffs' complaint should be dismissed in its entirety.

**CONCLUSION**

For all of the foregoing reasons and for the reasons set forth in the Defendant's Moving Brief, it is respectfully requested that the First Amended Complaint be dismissed against the Defendants pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim or Fed. R. Civ. P.

12(b)(1) directing that the Plaintiffs pursue recourse before the New Jersey Commissioner of Education.

Respectfully Submitted,
**Cleary Giacobbe Alfieri Jacobs Lagana LLC**
Attorneys for Defendant

By: /s/ Jaclyn S. D'Arminio
Jaclyn S. D'Arminio, Esq.

Dated: September 1, 2026